IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Edward Harold Saunders, Jr., ) | |
| ) | Civil Action No.2:12-cv-2152-JFA-BHH |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Mary M. Mitchell, Esther Slater, and ) | |
| G. Lewis, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The Plaintiff, proceeding *pro se*, brought this action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). This matter is before the Court upon Defendants' Motion for Summary Judgment (Dkt. No. 20); Plaintiff's Motion to Compel (Dkt. No. 24); and Defendants' Motion to Stay Discovery (Dkt. No. 29).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Rule 73.02(B)(2)(e), D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate for consideration.

The Plaintiff brought this action on or about July 25, 2012. (<u>See</u> Dkt. No. 1.) Although Plaintiff is currently incarcerated at the Federal Correctional Institution Victorville 1 in Adelanto, California, the instant action arises out of Plaintiff's previous incarceration at the Federal Correctional Institution in Edgefield, South Carolina ("FCI Edgefield"). (<u>See</u> Dkt. No. 1 at 2 of 15.) Defendants filed a Motion for Summary Judgment on November 28, 2012. (Dkt. No. 20.) By order filed November 29, 2012, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 21.) Plaintiff filed a Motion to Compel on or about December 26, 2012. (Dkt. No. 24.) On January 22, 2013, Defendants filed a Motion to Stay Discovery or for Protective Order, asserting that

discovery is not proper in light of the pending motion asserting qualified immunity. (Dkt. No. 29.) Plaintiff filed his Response in Opposition to the Motion for Summary Judgment on or about April 9, 2013. (See Dkt. No. 36.)

## **PROCEDURAL FACTS**

As noted above, Plaintiff brings the instant Bivens action for events that allegedly occurred at FCI Edgefield. (See generally Dkt. No. 1.) Plaintiff alleges that Defendant Mitchell, Warden of FCI Edgefield "made general policies that violated [P]laintiff's constitutional rights in that she deprived [P]laintiff of outdoor exercise and restricted his eligibility for educational programming absent exigent circumstances." (Dkt. No. 1 at 2 of 15.) According to Plaintiff, Mitchell "created and enforced local policy prohibiting inmates from serving life or 'In Custody' sentences from being assigned work details requiring them to work early, late, or overtime shifts." (Dkt. No. 1 at 4 of 15.) Plaintiff alleges that, pursuant to this policy, he "was only permitted to work between 7:30 a.m. and 3:30 p.m." (Id.) Plaintiff further states, "The recreation yard and department was only available between 12:00 p.m. and 3:30 p.m. Monday through Sunday which amounted to [P]laintiff having no outside exercise, recreation, and fresh air." (Id.) Plaintiff contends that Mitchell's policies violated his Eighth Amendment rights and that Plaintiff "suffered the loss of fresh air, regular outdoor exercise, and recreation." (Id. at 4-5 of 15.) Plaintiff further contends that Mitchell violated Plaintiff's due process rights due to the local policy prohibiting inmates from serving life or "In Custody" sentences from "being assigned to a work detail requiring them to work early, late, or overtime shifts." (Id. at 6 of 15.) It appears that Plaintiff was unable to enroll in a culinary arts program because such enrollment would require him to work between the hours of 4:30 A.M. and 7:00 P.M., when he was only permitted to work between 7:30 A.M. and 3:30 P.M. (Id. At 5-7.)

Plaintiff alleges Defendant Slater, a Discipline Hearing Officer ("DHO") at FCI Edgefield, violated Plaintiff's "constitutional rights to procedural due process and a fair hearing when she conducted a disciplinary hearing while the institution was on lockdown, thereby depriving [P]laintiff of the rights to be present, call witnesses, and present documentary evidence." (Dkt. No. 1 at 3 of 15.) Plaintiff alleges that Defendant Lewis, a Lieutenant at FCI Edgefield, also violated Plaintiff's "constitutional rights to procedural due process in that [Lewis] held a disciplinary hearing on an incident report served more than 72 hours after it was written." (Id.) Plaintiff further alleges that Lewis was "acting as a discipline hearing officer" despite "not having been approved by Regional Director as an alternative discipline hearing officer." (Id.) Plaintiff complains that, as a result of these improper hearings, he has, *inter alia,* "suffered an increase in his custody security and violence scoring, loss of privileges, and he has been deprived participation in the Suicide Watch Companionship program" and "continues to suffer." (Dkt. No. 1 at 10, 13 of 15.)

Plaintiff seeks compensatory and punitive damages. (Dkt. No. 1 at 14-15 of 15.) He also asks the Court to "dismiss and expunge . . . [the] incident reports" associated with the allegedly improper disciplinary hearings. (Dkt. No. 1 at 15.)

## APPLICABLE LAW

**Summary Judgment Motion Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3

(1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

## DISCUSSION

Defendants in the instant case seek summary judgment on the ground that they are entitled to qualified immunity because "none of the Defendants have violated Mr. Saunders' constitutional rights." (See Dkt. No. 20 at 11-12.) The doctrine of qualified immunity protects governmental officials performing discretionary functions from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). When an official properly asserts the defense of qualified immunity, the official is entitled to summary judgment if either: (1) the facts, taken in the light most favorable to the plaintiff, do not present the elements necessary to state a violation of a constitutional right; or (2) the right was not clearly established, such that it would not have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Pearson v. Callahan, 555 U.S. 223, 231-32 (2009).

The undersigned will evaluate Plaintiff's claims in turn.

**A. Claims against Defendant Mitchell**

As noted above, Plaintiff claims that Defendant Mitchell violated Plaintiff's Eighth Amendment and Fourteenth Amendment rights because her policies "deprived [P]laintiff of outdoor exercise and restricted his eligibility for educational programming absent exigent circumstances." (Dkt. No. 1 at 2 of 15; see also Dkt. No. 36 at 10 of 22.) Plaintiff alleges that, pursuant to local policy at FCI Edgefield, he was not permitted to participate in the culinary arts education program because the program required work between the hours of

4

4:30 A.M. and 7:00 P.M., when he was only permitted to work between 7:30 A.M. and 3:30 P.M. (Id. At 5-7.) Plaintiff also alleged that "[t]he recreation yard and department was only available between 12:00 p.m. and 3:30 p.m. Monday through Sunday which amounted to [P]laintiff having no outside exercise, recreation, and fresh air." (Id.)

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. A Bivens claim is analogous to a claim under 42 U.S.C. § 1983, although federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of state law. See Harlow v. Fitzgerald, 457 U.S. 800, 814–20 & n. 30 (1982). However, case law involving § 1983 claims is applicable in Bivens actions and vice versa. See Farmer v. Brennan, 511 U.S. 825 (1994); see also Ashcroft v. Iqbal, 556 U.S. 662, 675-76 (2009).

It is well settled that inmates have no constitutional right to a particular job. See Lomholt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002); Bulger v. U.S. Bureau of Prisons, 65 F.3d 48, 49-50 (5th Cir. 1995); Gibson v. McEvers, 631 F.2d 95, 98 (7th Cir.1980); see also Pruitt v. Moore, No. 3:02-0395-24BC, 2003 WL 23851094, at *11 (D.S.C. July 7, 2003), aff'd 86 Fed. App'x 615 (4th Cir. 2004) ("A [prisoner] has no constitutional right to participate in prison programs, so his ineligibility for prison work programs is not a deprivation of constitutional magnitude."). Plaintiff asserts, however, that Defendant Mitchell's policy "violated the Equal Protection Clause of the Fourteenth Amendment" because Defendant Mitchell "has not advanced a legitimate governmental purpose for her policy." (Dkt. No. 36 at 10 of 22.)

The Equal Protection Clause of the Fourteenth Amendment prohibits the States from denying any person equal protection of the laws. U.S. Const. amend. XIV, § 1. Although the Fourteenth Amendment is not by its terms applicable to the federal government, actions by

the federal government which classify individuals in a discriminatory manner could, under similar circumstances, violate the due process right embodied in the Fifth Amendment. See, e.g., Cunningham v. Drew, No. 9:12-2596-CMC-BM, 2012 WL 5306190, at *3 (D.S.C. Oct. 26, 2012). In the Fourth Circuit,

> [t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Because the Supreme Court has determined that prison regulations are valid if they are reasonably related to legitimate penological interests, the requisite level of scrutiny is generally the rational basis test rather than strict scrutiny. Id. at 654–55 (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)).[1] Therefore, a reviewing court must determine if the disparate treatment is reasonable in light of the security and management concerns of the prison system. Id. at 655. The Supreme Court articulated four factors to determine if a prison regulation is reasonable: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards, other prisoners, and "the allocation of prison resources generally"; and (4) whether there are ready alternatives to the regulation. Turner, 482 U.S. at 89–91.

The undersigned recommends granting summary judgment to Defendants on Plaintiff's Equal Protection claim. Plaintiff is unable to demonstrate the first element, that

---

[1] In Johnson v. California, 543 U.S. 499 (2005), the Supreme Court held that strict scrutiny was the proper standard of review for policy of racially segregating prisoners for up to sixty days when they entered a new correctional facility.

6

"he has been treated differently from others with whom he is similarly situated . . . " Morrison, 239 F.3d at 654. Plaintiff himself alleges that the at-issue policy prohibits "inmates from serving life or 'in custody' sentences from being assigned work details requiring them to work early, late, or overtime shifts." (Dkt. No. 1 at 4 of 15.) Plaintiff was serving a life sentence, so this policy prohibited him from work assignments that required working early, late, or overtime. (Mitchell Decl. ¶¶ 3-4.) Despite the fact that Plaintiff was unable to enroll in the Culinary Arts Apprenticeship Program (due to the required work hours), "other vocational training programs and courses were available to him through the institution Education Department." (Mitchell Decl. ¶ 4.) Plaintiff was treated no differently from all other inmates at FCI Edgefield serving sentences similar to his. See Weatherspoon v. Sparkman, No. 4:13cv62-MPM-DAS, 2013 WL 1386637, at *2 (N.D. Miss. Apr. 4, 2013) ("Plaintiff is not 'similarly situated' to the offenders allowed to work outside of the secure perimeter, as he is serving a life sentence and they are not."). Savage v. Johns, No. 5:11-CT-03267-FL, 2012 WL 483270, at *2 (E.D.N.C. Jan. 6, 2012), adopted at 2012 WL 483146 (E.D.N.C. Feb. 14, 2012) ("As a member of the North Carolina unit undergoing study, Plaintiff is not similarly situated to other civil detainees housed in the Maryland unit."); McKubbin v. Pettiford, No. 8:08-3248-HMH-BHH, 2009 WL 3245486, at *2 (D.S.C. Oct. 1, 2009); cf. United States v. O'Nan, 452 Fed. App'x 280, 283 (4th Cir. 2011). As a result, Plaintiff's Equal Protection claim fails.

As noted above, Plaintiff also brings a conditions of confinement claim against Defendant Mitchell. (See generally Compl.) Plaintiff alleged that Mitchell "made general policies that violated [P]laintiff's constitutional rights in that she deprived [P]laintiff of outdoor exercise . . . ." (Dkt. No. 1 at 2 of 15.) Plaintiff states, "The recreation yard and department was only available between 12:00 p.m. and 3:30 p.m. Monday through Sunday which amounted to [P]laintiff having no outside exercise, recreation, and fresh air." (Id.) Plaintiff

7

contends that Mitchell's policies violated his Eighth Amendment rights and that Plaintiff "suffered the loss of fresh air, regular outdoor exercise, and recreation." (Id. at 4-5 of 15.)

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir.1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir.2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81.

While denial of out-of-cell exercise for an extended period of time may violate the Eighth Amendment under the totality of the circumstances of a prisoner's confinement, Mitchell v. Rice, 954 F.2d 187, 191-92 (4th Cir. 1992), Plaintiff has not alleged that he was denied out-of-cell exercise. Plaintiff alleged in his Complaint that the "recreation yard and department was only available between 12:00 p.m. and 3:30 p.m. Monday through Sunday which amounted to [P]laintiff having no outside exercise, recreation, and fresh air." (Dkt. No. 1 at 2 of 15.) In his Response in Opposition, Plaintiff asserted that the recreation yard "was being closed down everyday at 12:00 pm[,] so he acquired an explanation from the

operational Lieutenant and was told the recreation yard was being closed due to a weather index." (Dkt. No. 36 at 2 of 22.) Mitchell presented evidence that the recreation yard was open from "daybreak (approximately 6:30 a.m.) and did not close until it became dark (approximately 8:00 p.m.)" and that "[a]ll inmates in the general population had access to the recreation area during these time frames." (Mitchell Decl. ¶ 5.)

It is not clear to the undersigned why, assuming the recreational yard was open from noon until 3:30 daily, this was constitutionally insufficient. Moreover, Plaintiff was not confined to his cell; Mitchell presented evidence that Plaintiff walked outside at least five times per day "when he walked to and from his housing unit to the dining hall (three times a day at minimum) and to and from his work assignments (twice a day at minimum)." (Mitchell Decl. ¶ 5.) Plaintiff's Eighth Amendment claim against Mitchell fails. Because all of Plaintiff's constitutional claims against Mitchell fail, Defendant Mitchell is entitled to qualified immunity.

**B. Claims Against Defendant Slater**

As noted above, Plaintiff alleges that Defendant Slater, a Discipline Hearing Officer ("DHO") at FCI Edgefield violated Plaintiff's "constitutional rights to procedural due process and a fair hearing when she conducted a disciplinary hearing, while the institution was on lockdown, depriving [P]laintiff of the rights to be present, call witnesses, and present documentary evidence." (Dkt. No. 1 at 3 of 15.) Although Plaintiff's claim against Defendant Slater arises out of an incident on November 9, 2010, (Dkt. No. 1 at 2 of 15), the rehearing on November 9 was required when the Regional Director granted Plaintiff's appeal concerning the results of his first hearing. (See Dkt. No. 1 at 7-9 of 15.) Plaintiff alleged as follows:

> On November 9, 2010, [Slater] held the rehearing, without allowing plaintiff to be present. The institution was on lockdown and had been on lockdown since November 1, 2010 due to a racial riot. Plaintiff had no knowledge the hearing

9

> was being held. He did not waive his right to be present, nor did he waive the right to call witnesses or to present documentary evidence. . . . Plaintiff and his witnesses were unavailable contingent upon the lockdown.

(Dkt. No. 1 at 9 of 15.) Plaintiff asserts that Slater's "finding of guilt on an incomplete record denied plaintiff a constitutional right to a fair hearing." (Id. at 10 of 15.)

Although previously raised in the context of a habeas petition pursuant to 28 U.S.C. § 2241, the due process issue related to this rehearing was addressed in Saunders v. Mitchell, No. 8:11-cv-00156-JFA (D.S.C.). In that case, Saunders' § 2241 petition was dismissed because "the alleged violation of due process at his disciplinary hearings did not result in the loss of any constitutionally protected liberty interest, such as an inmate's 'good time' credits, or the imposition on Petitioner of any atypical and significant hardship in relation to the ordinary incidents of prison life." (See Dkt. No. 9 at 5 in Saunders v. Mitchell, No. 8:11-cv-00156-JFA (D.S.C.).) Although the instant action is a Bivens action, the same analysis applies.

Under Wolff v. McDonnell, 418 U.S. 539 (1974), minimal due process is required when good time credits are taken away, i.e. (1) 24 hours advance written notice of charges; (2) written statement by factfinder as to evidence relied upon; (3) written statement by factfinder as to reason for disciplinary action taken; (4) opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals ; (5) counsel substitute if inmate is illiterate or case is complex; and (6) impartial hearing tribunal. See O'Bar v. Pinion, 953 F.2d 74 (4th Cir. 1991). Under Sandin v. Conner, 515 U.S. 472, 484 (1995), however, such limited right of due process is required only in an inmate disciplinary action that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

In the case *sub judice*, Plaintiff's sanction was "30 days disciplinary segregation, 6 month loss of telephone privileges, and 6 month loss of commissary privileges." (Slater

10

Decl. ¶¶ 4, 6.) Such a sanction, however, does not implicate due process rights. See Sandin, 515 U.S. 472; Beverati v. Smith, 120 F.3d 500, 502-04 (4th Cir.1997) (confinement in administrative segregation does not exceed the sentence imposed in such an extreme way as to give rise to the protection of the Due Process Clause by its own force, and inmates did not possess a liberty interest in avoiding administrative segregation); Madison v. Parker, 104 F.3d 765, 768 (5th Cir.1997) (holding that commissary restrictions did not entitle inmate to due process protections during disciplinary proceeding); United States v. Alkire, No. 95–7885, 1996 WL 166400, at * 1 (4th Cir. Apr.10, 1996) (no constitutional right to the use of a telephone in prison); Joyner v. Ozmint, No. 3:09-cv-2524-DCN-JRM, 2010 WL 3783167, at *4 (D.S.C. Sept. 22, 2010), aff'd 425 Fed. App'x 223 (4th Cir. 2011) ("Plaintiff's discipline included 180 days of disciplinary detention, or segregated confinement, and loss of canteen, visitation, and phone privileges for one year. In *Sandin*, the Supreme Court held that 'discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.' 515 U.S. at 486. And while plaintiff did not challenge his loss of canteen, visitation, and phone privileges, courts have held that these forms of discipline do not implicate the Due Process Clause of the Fourteenth Amendment. Without a valid life, liberty, or property interest, plaintiff is unable to trigger the due process analysis enunciated in *Wolff*." (internal citations omitted)); Bennett v. Cannon, C/A No. 2:05–2634–GR, 2006 WL 2345983, at *2 (D.S.C. Aug.10, 2006) ("[t]here is simply no freestanding constitutional right to canteen privileges at all"); Tanney v. Boles, 400 F.Supp.2d 1027, 1040 (E.D. Mich.2005) (finding that a temporary telephone privilege suspension does not implicate a due process liberty interest).

Slater is entitled to qualified immunity, and the undersigned therefore recommends granting summary judgment to Defendant Slater.[2]

**C. Claims Against Defendant Lewis**

Plaintiff's complaints against Defendant Lewis concern a disciplinary hearing held on January 20, 2011, in which Lewis served as the hearing officer. (Dkt. No. 1 at 11-12 of 15.) Essentially, Plaintiff asserts that Lewis conducting the hearing violated Plaintiff's due process rights because Lewis "was not authorized to conduct the hearing because he had not been approved by the Regional Director as an alternative hearing officer." (Id. at 12.) Citing 28 C.F.R. § 541.15(a), Plaintiff also asserts that the hearing should not have been held because "the incident report was void because it had not been served within 24 hours of the incident . . . ." (Id.)

Defendants presented Lewis' Declaration with their Motion for Summary Judgment. (Dkt. No. 20-5.) Lewis states therein that on November 5, 2009, he "successfully completed the Discipline Hearing Officer (DHO) certification training and began conducting inmate discipline hearings at FCI Edgefield as an Alternative Discipline Hearing Officer." (Lewis Decl. ¶ 3.) Lewis' Declaration also indicates that Plaintiff did in fact receive a copy of the incident report of November 23, 2010, and again on November 26, 2010, when Plaintiff contended at a Unit Discipline Committee hearing that he had not been provided with a copy of the incident report. (Lewis Decl. ¶¶ 5-6.) Lewis further states,

---

[2]The undersigned further notes that Slater presented evidence that Plaintiff was at the rehearing and simply chose to leave. (Slater Decl. ¶ 6.) Slater also presented evidence that when she asked Plaintiff about the substance of his witnesses' testimony "so [she] could determine if their statements would be relevant," Plaintiff "refused to provide this information and asked that he be returned to his cell." (Id.) While Plaintiff's description of the events surrounding the November 9, 2010 hearing differs, his Complaint is not a verified complaint, and he did not attach an affidavit or declaration to his Response in Opposition. Plaintiff has therefore failed to present evidence of a genuine issue of fact. See 28 U.S.C. § 1746; Williams v. Griffin, 952 F.2d 820, 823 (4th Cir.1991); see also FED. R. CIV. P. 56. For the reasons set forth above, however, such an issue of fact is not a material issue of fact.

12

> If even as he alleges Mr. Saunders had not received a copy of the incident report on November 23, 2010, there was no violation of his due process rights. The regulation outlining the procedures for delivery of an incident report states that an inmate will "ordinarily" receive the incident report within 24 hours of staff becoming aware of the inmate involvement in the incident. This regulation does not mandate that the inmate receive a copy of the incident report within the 24 hour time period.

(Lewis Decl. ¶ 7.)

The Code of Federal Regulations provides, in relevant part,

> (a) Incident report. The discipline process starts when staff witness or reasonably believe that you committed a prohibited act. A staff member will issue you an incident report describing the incident and the prohibited act(s) you are charged with committing. You will **ordinarily** receive the incident report within 24 hours of staff becoming aware of your involvement in the incident.

28 C.F.R. § 541.5(a) (emphasis added). This language is not mandatory and does not create a liberty interest in receiving the incident report within a certain period of time. See Smith v. Bureau of Prisons, 7:03CV00662, 2004 WL 3397938, at *5 (W.D. Va. Oct. 22, 2004) (an inmate has no liberty interest under Wolff, or under BOP regulations, in receiving an incident report within a certain period of time after an alleged event occurs); Irvin v. Federal Bureau of Prisons, 9:08–03038–HFF–BM, 2009 WL 1811245, at *5 (D.S.C. June 24, 2009) (citing Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D.Pa.1992) ("The Constitution does not require strict adherence to administrative regulations and guidelines.")). Accordingly, Plaintiff cannot establish a violation of his constitutional rights, even assuming he did not receive he incident report within 24 hours as he alleges.

Plaintiff also alleged that Defendant Lewis was not a proper DHO because the Regional Director had not approved Lewis as an alternative hearing officer. Lewis presented evidence that he was, in fact, properly certified. Plaintiff has presented no evidence otherwise. Even assuming that Lewis was not approved by the Regional Director as an alternative hearing officer, such would not amount to a constitutional violation. Cf. Payne v.

13

Craig, No. 5:08-0989, 2011 WL 4021321, at *4 (S.D. W. Va. June 30, 2011), adopted at 2011 WL 4021320 (S.D. W. Va. Sept. 9, 2011). An inmate is entitled to have a charge against him determined by an impartial decisionmaker. See Wolff, 418 U.S. at 563-72. A decisionmaker is considered impartial unless he or she has "a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role," in the circumstances underlying the charge. Meyers v. Aldredge, 492 F.2d 296, 306 (3d Cir.1974); Mitchell v. Mavnard, 80 F.3d 1433, 1446 (10th Cir.1996). Plaintiff has not alleged that Lewis was involved in the facts giving rise to charges; the evidence in the record reveals that Lewis was not involved. (See Dkt. No. 20-5; Dkt. No. 20-6.) Lewis is entitled to qualified immunity, and the undersigned therefore recommends granting summary judgment to Defendant Lewis.

**D. Other Pending Motions**

On or about January 4, 2013, Plaintiff filed a Motion to Compel. (Dkt. No. 24.) Shortly thereafter, Defendants filed a Motion to Stay the Motion to Compel and a Motion for Protective Order. (See Dkt. No. 29.) Defendants contended, in their Motion for Protective Order, that discovery was not appropriate while there was a pending motion asserting qualified immunity. (Dkt. No. 29 at 1.)

The undersigned has carefully reviewed the discovery materials requested by Plaintiff. (See Dkt. No. 24.) With respect to Defendant Mitchell, Plaintiff asked Mitchell for information regarding whether individualized assessments of prisoners were required–and whether such an assessment was done on Plaintiff–before denying a prisoner the opportunity for a work program. (Dkt. No. 24 at 1-2 of 5.) Plaintiff also seeks information regarding when FCI Edgefield was on lockdown, and various documents related to the recreational yard. (Id. at 3-4.) Plaintiff is not entitled to such broad discovery in the instant case because, as detailed above, Plaintiff fails to establish an equal protection violation

14

against Mitchell because Plaintiff was subjected to exactly the same policy regarding work detail as every other inmate at FCI Edgefield. Furthermore, even assuming the recreational yard was only open during the time alleged by Plaintiff, Plaintiff's Eighth Amendment claim against Mitchell fails. Mitchell is entitled to qualified immunity, and Plaintiff is not entitled to such sweeping discovery when qualified immunity is appropriate.

Plaintiff's first discovery request to Slater concerns policy regarding documenting an inmate's refusal to appear at a disciplinary hearing. Even if such policy existed, and Slater failed to comply with it, such failure would not amount to a constitutional violation. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Va., 907 F.2d 1459, 1469 (4th Cir.1990). Plaintiff also requests various information related to the November 9, 2010 rehearing. (Dkt. No. 24 at 4 of 5.) None of that information changes the fact that the sanctions imposed do not implicate due process rights.

Finally, turning to the information requested from Defendant Lewis, none of the requested information would assist Plaintiff in establishing a constitutional violation. As discussed above, even if Lewis had not been approved by the Regional Director as an alternative hearing officer, and even if the incident report was not served on Plaintiff within 24 hours, Lewis did not violate Plaintiff's constitutional rights. Plaintiff is not entitled to the requested discovery. The undersigned therefore recommends denying Plaintiff's Motion to Compel (Dkt. No. 24) and dismissing Defendants' Motion to Stay or Motion for Protective Order (Dkt. No. 29) as moot.

## **CONCLUSION**

It is therefore RECOMMENDED for the foregoing reasons, that Defendants' Motion for Summary Judgment (Dkt. No. 20) be GRANTED. It is further RECOMMENDED that Plaintiff's Motion to Compel (Dkt. No. 24) be DENIED, and that Defendants' Motion to Stay Discovery or for Protective Order (Dkt. No. 29) be DISMISSED as moot.

IT IS SO RECOMMENDED.

                                        s/Bruce Howe Hendricks
                                        United States Magistrate Judge

July 22, 2013
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).